UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

CORRECTION OFFICERS' BENEVOLENT
ASSOCIATION, Inc.,

                                      Plaintiff,

                 15 Civ. 05914 (AJN)(CLP)

        -against-

CITY OF NEW YORK,

                                      Defendant.

------------------------------------------------------------------------ X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6)**

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, New York 10007*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ......................................................................................................................... 2

    POINT I ...................................................................................................................... 2

        PLAINTIFF LACKS STANDING TO CHALLENGE THE DIVISION ORDER AT ISSUE IN THIS MATTER. .................................................................... 2

    POINT II ..................................................................................................................... 5

        PLAINTIFF'S CLAIMS OTHERWISE FAIL AS A MATTER OF LAW. ....................................................................................................... 5

        A.   The Division Order Does Not Authorize or Mandate an Unlawful Search ................................................................ 5

        B.   The Division Order Does Not Authorize Unconstitutional Arrests .......................................................................... 7

        C.   The Division Order Does Not Authorize Impermissible Drug Testing ................................................................... 8

        D.   The Division Order Does Not Violate Section 75 of the New York Civil Service Law ............................................... 9

CONCLUSION ..................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                               **Pages**

*Burka v. New York City Transit Authority*,
    739 F. Supp. 814 (S.D.N.Y. 1990) ...............................................................................8, 9

*Caruso v. Ward*,
    72 N.Y.2d 432 (N.Y. 1988) ...............................................................................................6

*Hallandale Professional Fire Fighters Local 2238 v. Hallandale*,
    922 F.2d 756 (11th Cir. 1991) .......................................................................................3, 4

*Hedges v. Obama*,
    724 F.3d 170, 188 (2d Cir. 2013).....................................................................................2, 5

*Nat'l Treasury Employees Union v. Von Raab*,
    109 S. Ct. 1384 (1989).......................................................................................................8

*O'Connor v. Ortega*,
    480 U.S. 709 (1987)...........................................................................................................6

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)...........................................................................................................4

*People v. Bramma*,
    171 Misc. 2d 480 (N.Y. Sup. Ct. Jan. 28, 1997)................................................................7

*People v. Gathogo*,
    276 A.D.2d 925 (3d Dep't 2000) .......................................................................................6

*People v. Edwards*,
    No. 4881/00, 2001 N.Y. Misc. LEXIS 962 (N.Y. Sup. Ct. Dec. 21, 2001)...............................7

*Romo v. Champion*,
    46 F.3d 1013 (10th Cir. 1995) ...........................................................................................6

*Security and Law Enforcement Employees, Dist. Council 82, American*
    *Federation of State, County and Municipal Employees, AFL-CIO v. Carey*,
    737 F.2d 187 (2d Cir. 1984)...............................................................................................6

*Seelig v. Koehler*,
    76 N.Y.2d 87 (N.Y. 1990) .................................................................................................8

*Skinner v. Ry. Labor Executives' Ass'n*,
    489 U.S. 602 (1989)...........................................................................................................8

*United States v. Glover*,
    957 F.2d 1004 (2d Cir. 1992).............................................................................................6

Cases                                                                                                                    Pages

**Statutes**

N.Y. Civ. Serv. Law § 75..................................................................................................10

## PRELIMINARY STATEMENT

Plaintiff Correction Officers' Benevolent Association ("COBA" or "plaintiff"), the collective bargaining representative for individuals employed with the Department of Correction ("DOC") as correction officers, has filed an Amended Complaint (hereinafter "complaint") seeking to enjoin the DOC from implementing a Division Order establishing policies and procedures for the Investigation Division Canine Unit. Defendant has moved to dismiss the complaint on the grounds that plaintiff lacks standing to seek the injunctive relief requested in this action, and that the claims raised in the complaint otherwise fail as a matter of law. *See* Memorandum of Law in Support of Defendant's Motion to Dismiss the Amended Complaint Pursuant to Rule of Federal Procedure 12(b)(1) and 12(b)(6), dated October 30, 2015 (hereinafter "Defendant's Initial MOL").

In response, plaintiff has now submitted a memorandum of law (hereinafter "Plaintiff's MOL"), in which it withdraws its claim that the Division Order at issue is unconstitutionally vague, but continues to argue that it violates the United States and New York State Constitutions by authorizing unlawful searches and arrests, and that it violates the New York Civil Service Law by authorizing the suspension of employees under certain specified circumstances. Plaintiff further argues that it has standing to bring this action because there exists a possibility that one or more of its members may be the subject of a false positive alert by a canine. As set forth herein, plaintiff's arguments in opposition to the instant motion are completely unavailing. Once again, plaintiff lacks standing to bring this action because the alleged threat of harm to its members is purely speculative and, quite frankly, entirely fanciful. Moreover, even if plaintiff could establish the existence of an actual case or controversy, it fails to identify a single provision of the Division Order that authorizes a constitutional or statutory violation. Accordingly, for the reasons set forth herein and in defendant's initial memorandum of law, plaintiff's complaint must

be dismissed in its entirety.

## ARGUMENT

### POINT I

### PLAINTIFF LACKS STANDING TO CHALLENGE THE DIVISION ORDER AT ISSUE IN THIS MATTER.

In its initial memorandum of law, defendant argued that plaintiff lacks standing to challenge the Division Order in question because plaintiff cannot establish the requisite "imminent threat of future harm or a present harm incurred in consequence of such a threat," necessary to demonstrate "fear-based standing" under Article III. *See* Defendant's Initial MOL at 6-10; *see also Hedges v. Obama*, 724 F.3d 170, 188-89 (2d Cir. 2013). In response, plaintiff argues that: (1) the fact that the Amended Complaint references a draft of the Division Order at issue should not preclude a finding of standing as the draft order is final, for all intents and purposes; and (2) there exists a "clear danger" that DOC correction officers will be subjected to search following a positive canine alert due to their proximity to inmates using and possessing illegal narcotics. *See* Plaintiff's MOL at 9-11. These arguments are insufficient to establish standing under Article III.

As an initial matter, defendant reiterates that it has made every attempt to negotiate the terms of the Division Order with the union, but the union has indicated that it no longer wishes to engage in such discussions. Thus, because it is unlikely that any further amendments will be made, for purposes of the instant motion, the Division Order shall be deemed final. However, the fact that the Division Order is final is not sufficient to establish standing where, as here, plaintiff has failed to demonstrate an actual case or controversy.

As set forth in defendant's initial memorandum of law, plaintiff has wholly failed to plead any facts that would demonstrate an imminent threat of future harm to any of its members,

and the speculative allegations contained in its memorandum of law fail to alter this reality. Indeed, plaintiff's allegations make little sense. According to plaintiff, because officers work in close proximity to inmates who possess and use narcotics, there is a "distinct possibility" that a canine sniff of one or more of its officers will produce a positive alert for residual odors. *See* Plaintiff's MOL at 10. This argument is nothing short of absurd. Perhaps if an inmate were to exhale marijuana smoke onto an officer's clothing, a canine sniff would produce a positive alert for residual odors; however, if an officer was allowing inmates to smoke marijuana in his or her presence, then he or she obviously would be in violation of DOC policy and would be well-deserving of any disciplinary action that might ensue. Moreover, plaintiff still has failed to offer nothing more than mere speculation that such an unusual scenario might actually occur.

  Far from strengthening its position, the cases relied upon by plaintiff in its memorandum of law actually underscore the absence of standing in this matter. For example, in *Hallandale Professional Fire Fighters Local 2238 v. Hallandale*, 922 F.2d 756 (11th Cir. 1991), a case from the United States Court of Appeals for the Eleventh Circuit, the court actually concluded that the plaintiff union lacked standing to challenge the employment policy at issue because plaintiff had failed to demonstrate the existence of a justiciable case or controversy. In *Hallandale*, the plaintiff union challenged a city employment policy establishing guidelines for the criticism of supervisors and other city officials by city employees on the grounds that it impermissibly chilled employee speech in violation of the First Amendment. *See id.* at 758, 762. While the court acknowledged that the injury requirement for establishing Article III standing is "loosely" applied where First Amendment rights are involved, it nonetheless found that plaintiff had failed to establish standing because it did not allege that its members intended to violate the policy, nor

did it identify any type of speech in which its members might want to engage that might have been chilled by the policy in question. *See id.* at 760-62.

Plaintiff's assertion of standing in this matter is even less compelling than that of the plaintiff in *Hallandale*, as the instant matter does not involve the exercise of First Amendment rights. Here, as in *Hallandale*, plaintiff does not allege that its members intend to engage in any conduct that would violate DOC policy and subject those members to search, discipline and/or arrest. Moreover, plaintiff fails to identify any lawful activity in which its members might elect not to engage out of fear of search, discipline and/or arrest under the policy. Rather, plaintiff argues only that it is possible that one of its members may be the subject of a false positive alert from a canine sniff, and subsequently be searched, disciplined and/or arrested. *See* Plaintiff's MOL at 9-11. However, plaintiff has offered no factual basis for concluding that such a false positive alert is likely, or even possible, such as to render this alleged threat of future harm anything more than mere speculation. As the Supreme Court stated in *O'Shea v. Littleton*, 414 U.S. 488 (1974), courts should assume that individuals "will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by [defendant]." *Id.* at 497. Accordingly, it must be presumed that plaintiff's members will not bring narcotics into DOC facilities or engage in other unlawful conduct that would result in the presence of narcotics or residual odors on their persons or property. Where, as here, plaintiff does not allege that its members intend to engage in any conduct that is likely to result in a positive canine alert that would subject them to the alleged unlawful searches, disciplinary actions or arrests they seek to attack, the alleged threat of harm is simply too remote to satisfy the case-or-controversy requirement of Article III standing. *See id.* at 498 ("Under these circumstances, where respondents do not claim any constitutional right to

engage in conduct proscribed by therefore presumably permissible state laws, or indicate that it is otherwise their intention to so conduct themselves, the threat of injury from the alleged course of conduct they attack is simply too remote to satisfy the case-or-controversy requirement and permit adjudication by a federal court."). Accordingly, because plaintiff has failed to satisfy its burden of establishing standing, the complaint must be dismissed in its entirety. *See, e.g.*, *Hedges*, 724 F.3d 170 at 188 (noting that the burden of establishing standing rests with the party seeking to invoke federal jurisdiction).

## POINT II

### PLAINTIFF'S CLAIMS OTHERWISE FAIL AS A MATTER OF LAW.

As defendant argued in its initial memorandum of law, even assuming, without conceding, that plaintiff can establish standing to bring this action, the complaint must nonetheless be dismissed because plaintiff cannot establish that the Division Order in question violates any law or constitutional provision. *See* Initial MOL at 10-16. In response, while plaintiff concedes that the Division Order is not unconstitutionally vague, it still argues that the order is unconstitutional in that it authorizes unlawful searches, arrests and drug testing. *See* Plaintiff's MOL at 4-8. Additionally, plaintiff argues that the Division Order violates New York Civil Service Law § 75 by authorizing the suspension of an employee who refuses to consent to a search following a positive canine alert. *See id.* at 9. Once again, plaintiff's arguments are unavailing.

**A.** **The Division Order Does Not Authorize or Mandate an Unlawful Search**

First, plaintiff maintains that a positive canine alert is insufficient to justify the type of search contemplated by the Division Order. *See* Plaintiff's MOL at 4-7. Specifically, plaintiff

argues that a positive canine alert is insufficient to constitute the "reasonable suspicion" necessary to justify the search of a correction officer. *See id.* Plaintiff's argument is misplaced.

As plaintiff appears to acknowledge, it is well-settled that a "reasonable suspicion" standard governs searches of correction officers. *Security and Law Enforcement Employees, Dist. Council 82, American Federation of State, County and Municipal Employees, AFL-CIO v. Carey*, 737 F.2d 187, 203-204 (2d Cir. 1984); *see also Caruso v. Ward*, 72 N.Y.2d 432, 437 (N.Y. 1988) ("[A] search by a public employer may be justified at its inception 'when there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct, or that the search is necessary for a noninvestigatory work-related purpose.'") (quoting *O'Connor v. Ortega*, 480 U.S. 709, 726 (1987)). Thus, in order to justify a strip search of a correction officer, the officials conducting the search need only demonstrate the existence of "reasonable suspicion" that the search would lead to the discovery of contraband. *See Carey*, 737 F.2d at 203-205. Finally, given that a positive canine alert has been held sufficient to establish probable cause, it necessarily follows that such a positive alert is sufficient to satisfy the lesser standard of reasonable suspicion. *See United States v. Glover*, 957 F.2d 1004, 1013 (2d Cir. 1992)*; see also Romo v. Champion*, 46 F.3d 1013, 1020 (10th Cir. 1995); *People v. Gathogo*, 276 A.D.2d 925, 926-27 (3d Dep't 2000) (noting that a positive canine alert was sufficient to establish probable cause to search a vehicle). As previously noted, the Division Order does not authorize a full strip search of correction officers who are the subject of a positive canine alert. *See* Exhibit C at 2. Again, because the positive canine alert would be sufficient reasonable suspicion to justify a full strip search of an officer, it is certainly sufficient to justify the less intrusive search contemplated by the Division Order. Accordingly, plaintiff

6

simply cannot demonstrate that the search to be conducted in the event of a positive canine alert is unlawful as a matter of law.

In addition to its challenge to the search to be conducted in the event of a positive canine alert, plaintiff now appears to argue, for the first time and in direct contradiction of its prior representations, *see* Exhibit D at 2:18-3:4, that the initial canine sniff violates the New York State Constitution. *See* Plaintiff's MOL at 6. This argument is specious. As stated in defendant's initial memorandum of law, New York courts consistently have sided with federal courts in concluding that an individual does not have a reasonable expectation of privacy in the odors emanating from one's body. *See, e.g.*, *People v. Edwards*, No. 4881/00, 2001 N.Y. Misc. LEXIS 962, at *25 (N.Y. Sup. Ct. Dec. 21, 2001); *People v. Bramma*, 171 Misc. 2d 480, 483-84 (N.Y. Sup. Ct. Jan. 28, 1997) (collecting state and federal case law). As such, a passive canine sniff of one's person does not constitute a "search" under either the United States or New York State Constitutions. *See Bramma*, 171 Misc. 2d at 483.

Here, the Division Order at issue authorizes passive detection canine sniffs of correction officers entering DOC facilities, and further provides for a lawful search of the officer's person in the event that the canine sniff produces a positive alert. The law is well settled that that such a procedure violates neither the United States nor the New York State Constitution, and plaintiff has provided absolutely no basis for reaching a different conclusion. Accordingly, plaintiff's claims that the Division Order authorizes unlawful searches of correction officers must be rejected.

**B.     The Division Order Does Not Authorize Unconstitutional Arrests**

Next, plaintiff argues that the Division Order is unlawful because it authorizes an unconstitutional arrest. *See* Plaintiff's MOL at 7. However, plaintiff's claim that the Division Order authorizes the arrest of an individual solely on the basis of a positive canine alert is just

plain wrong. Rather, an individual will be arrested only when the search conducted pursuant to that alert reveals that the officer was in possession of narcotics or other contraband. *See* Exhibit C at 7. It simply cannot be disputed that the discovery of actual illegal contraband in an officer's possession is sufficient to justify that individual's arrest. Accordingly, this claim must also be rejected.

    **C.**    **The Division Order Does Not Authorize Impermissible Drug Testing**

Plaintiff next argues that the Division Order authorizes impermissible drug testing of correction officers who refuse to consent to a search following a positive canine alert. *See* Plaintiff's MOL at 7-8. According to plaintiff, a positive canine alert may indicate that an individual is merely in possession of illegal narcotics, not necessarily that the individual is under the influence of narcotics, and these alternative possibilities render an individualized drug test unlawful under the circumstances. *See id.* Plaintiff's argument demonstrates nothing more than a fundamental misunderstanding of the "reasonable suspicion" requirement.

As an initial matter, it is well-settled that random suspicion-less drug testing of individuals in safety-sensitive positions, such as correction officers, is neither unlawful nor unconstitutional. *See Nat'l Treasury Employees Union v. Von Raab*, 109 S. Ct. 1384, 1397-98 (1989); *Seelig v. Koehler*, 76 N.Y.2d 87, 95-96 (N.Y. 1990). Thus, the DOC is free to conduct random drug testing of its employees even in the absence of any suspicion of unlawful activity. However, where, as here, the drug testing is not random, but directed at a particular individual, the search is lawful where it is based on "reasonable suspicion." *See Burka v. New York City Transit Authority*, 739 F. Supp. 814, 828-30 (S.D.N.Y. 1990).

The "reasonable suspicion" requirement can also be articulated as "some quantum of individualized suspicion." *See Burka*, 739 F. Supp. 814 at 827 (citing *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 665 (1989). Where a well-trained canine detects the presence of

8

narcotics or residual odors on an individual, there is certainly reason to suspect that the individual either possesses, or recently possessed, illegal narcotics. Moreover, common sense dictates the conclusion that a person who possesses narcotics does so for one of two reasons: personal use or distribution. Here, plaintiff appears to argue that a positive alert does not generate the requisite reasonable suspicion to justify individualized drug testing because the canine alert evinces only that the officer was in possession of narcotics, not that the officer was under the influence of narcotics. *See* Plaintiff's MOL at 7-8. However, it is imminently reasonable to suspect that an individual who possesses narcotics does so for his or her own personal use, and that suspicion does not become unreasonable because there exists a possibility that the individual is a drug distributor, and not a drug user. By way of comparison, in *Burka*, the court concluded that the drug testing of transit employees immediately following a traffic accident satisfied the reasonable suspicion standard. *See Burka*, 739 F. Supp. 814 at 830. There, it was sufficient that drug use was one possible cause of the incident in question, and the fact that alternative possible causes existed did not eliminate the presence of reasonable suspicion. Similarly, when an officer is the subject of a positive canine alert, one of two likely explanations for that result is that the officer is or was in possession of narcotics for his or her own personal use. Therefore, it is imminently reasonable to suspect the officer of drug use such as to justify the individualized drug testing authorized by the Division Order.

**D.      The Division Order Does Not Violate Section 75 of the New York Civil Service Law**

Finally, plaintiff claims that the Division Order violates Section 75 of the New York Civil Service Law in that it authorizes the suspension of correction officers without a hearing. *See* Plaintiff's MOL at 9. Specifically, plaintiff argues that it is improper for the DOC to suspend an officer pending a hearing purely based on that officer's refusal to consent to an unlawful search. *See id.* However, as set forth *supra* and in defendant's initial memorandum of law, the

search to be conducted in the event of a positive canine alert is neither unlawful nor unconstitutional, so plaintiff cannot rely on its specious claim that its members will somehow suffer disciplinary action based on their refusal to consent to an unconstitutional search. Once again, Section 75 provides for the suspension of employees pending the resolution of disciplinary charges, and provides for the recovery of lost wages for the period of suspension in the event the employee ultimately is exonerated of those charges. *See* N.Y. Civ. Serv. Law § 75(3). Here, the Division Order is fully consistent with the provisions of Section 75 of the New York Civil Service Law, and plaintiff has provided absolutely no basis for concluding that the Division Order will be implemented in such a manner so as to deprive correction officers of their rights under that statute. Accordingly, yet again, plaintiff's claim is without merit and must be dismissed.

## CONCLUSION

**WHEREFORE,** for the reasons set forth above and in defendant's initial memorandum of law, plaintiff's Complaint should be dismissed with prejudice in its entirety, together with such other and further relief as this Court may deem just and proper.

Dated:     New York, New York
           January 11, 2016

                    ZACHARY W. CARTER
                    Corporation Counsel
                      of the City of New York
                    *Attorney for Defendant*
                    100 Church Street
                    New York, New York 10007
                    (212) 356-2444

                    By:           /S/
                       Christopher A. Seacord
                       Assistant Corporation Counsel

10