UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JUN 16 2016
```

Correction Officers' Benevolent Association,

                Plaintiff,

–v–

City of New York,

                Defendant.

15-CV-5914 (AJN)

MEMORANDUM AND ORDER

ALISON J. NATHAN, District Judge:

      Presently before the Court is Defendant City of New York's motion to dismiss Plaintiff's Amended Complaint for, *inter alia*, lack of standing. Dkt. No. 18. For the reasons articulated below, that motion is GRANTED.

I.     BACKGROUND

      Plaintiff Correction Officers' Benevolent Association ("COBA") is the labor union representing correction officers ("officers") in the New York City Department of Correction. Dkt. No. 17 ("Am. Comp.") ¶ 2. This suit involves an internal Division Order issued by the Department of Correction. *Id.* ¶ 1. The current version of the Division Order, which has been amended twice, is dated September 10, 2015. Am. Comp. ¶ 6; *id.* Ex. A ("Div. Or.") IV.H. Because COBA will not negotiate further with the City, the parties agree that the Division Order is final for the purpose of this motion. Dkt. No. 26 ("Rep. Br.") at 2.

      The Division Order describes "integrity operations" for detecting contraband smuggling during which officers may be subjected to "passive detection canine searches" ("canine sniffs"). Div. Or. ¶ IV.H.1.b. These canine sniffs require officers to sit or stand while a trained handler leads a law enforcement canine past them. *Id.* ¶ IV.H.1.c, d. "If the canine alerts the handler to

1

the presence of narcotics or residual odors" (a "positive alert"), *id.* ¶ IV.H.1.f, the officer is taken to a location with "no cameras or electronic recording devices" for "a search of the person, including inside the pockets of the clothing and also includ[ing] all under garments [*sic*]." *Id.* ¶¶ III.M, IV.H.1.f. This search "does not include the removal of the last layer of clothing the subject may have on at the time." *Id.* ¶ III.M. If narcotics or other contraband are found during this search, the officer will "be immediately suspended and subject to arrest." *Id.* ¶ IV.H.1.f.a. If no narcotics or other contraband are found during this search, the officer will undergo another canine sniff. *Id.* ¶ IV.H.1.f.b. If an officer "refuses to submit to a search of his person and/or property" after a positive alert, "the employee shall be immediately suspended and . . . subject to a [drug] test." *Id.* ¶ IV.H.1.f.c.

COBA argues that the policy set forth in the Division Order is unconstitutionally vague, violates the Fourth Amendment of the United States Constitution and Article 1, Section 12 of the New York State Constitution, and violates Section 75 of the New York Civil Service Law. Am. Comp. ¶¶ 10, 13, 16, 22. As a result, COBA requests that the Court "permanently enjoin enforcement" of the Division Order. *Id.* at 7. On October 30, 2015, the City moved to dismiss the Amended Complaint, arguing primarily that COBA lacks standing to bring this suit for declaratory and injunctive relief on behalf of its members. Dkt. No. 18.

## II.    LEGAL STANDARD

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). The standing doctrine is "an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 560 (1992). "[T]he irreducible constitutional minimum of standing" consists of three elements:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560-61 (quotation marks, citations, alterations, and footnotes omitted). There are further limitations on parties seeking declaratory or injunctive relief, who "cannot rely on past injury to satisfy the injury requirement but must show . . . that he or she will be injured in the future." *Deshawn E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citing *Lyons*, 461 U.S. at 105-06). This showing requires more than an "objectively reasonable likelihood" of future injury, but instead requires the party to demonstrate "that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quoting *Lujan*, 504 U.S. 564 n.2).

The partying bringing suit bears the burden of establishing standing. *Lujan*, 504 U.S. at 561. Where, as here, an organization or association files suit, it "has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). This ensures that associational standing does not become "broader or more extensive than the standing of the organization's members." *Small v. Gen. Nutrition Cos.*, 388 F. Supp. 2d 83, 98 (E.D.N.Y. 2005).

Although motions to dismiss for lack of standing are sometimes brought under Federal Rule of Civil Procedure 12(b)(6), the proper vehicle is Rule 12(b)(1). *See All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006). This distinction is largely insignificant, however, because "the standards for reviewing dismissals granted under 12(b)(1) and 12(b)(6) are identical." *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 (2d Cir. 1999). "For purposes of ruling on a motion to dismiss for want of standing, . . . [the] court[] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). The Court may also consider affidavits containing "particularized allegations of fact deemed supportive of plaintiff's standing." *Id.*; *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

## III.   DISCUSSION

The primary dispute in this case centers on the first prongs of *Lujan* and *Hunt*, namely whether any members of COBA have an "actual or imminent" injury sufficient to establish COBA's standing to bring suit for injunctive or declaratory relief on their behalf. In arguing that such injury is lacking, the City analogizes to several Supreme Court cases holding that plaintiffs lacked standing to enjoin allegedly unconstitutional practices and policies.

First, in *O'Shea v. Littleton*, 414 U.S. 488 (1974), plaintiffs sought to enjoin bail and sentencing practices in their county. *Id.* at 495. Based on the nature of the practices challenged, the Supreme Court noted that "the prospect of future injury rests on the likelihood that [plaintiffs] will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing." *Id.* at 496. Because plaintiffs articulated no intent to engage in conduct that would lead to their arrest and the Court "assume[d] that [they would] conduct their activities within the law," the Court refused to

speculate as to the likelihood of plaintiffs being arrested. *Id.* at 497. Because "the alleged threatened injury" was "necessarily contingent" on some later arrest, the Court found the "threat of injury from the alleged course of conduct" was "simply too remote" to establish standing for injunctive relief. *Id.* at 498.

Similarly, in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the plaintiff challenged the Los Angeles Police Department's policy on the use of chokeholds. *Id.* at 98. Although the plaintiff had been the victim of a chokehold in the past, the Supreme Court emphasized that his "standing to seek the injunction requested depended on whether he was likely to suffer *future* injury from the use of the chokeholds by police officers." *Id.* at 105 (emphasis added). The Court suggested that, to demonstrate standing, he would have to "establish a real and immediate threat that he would again be stopped for . . . [some] offense[] by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." *Id.* While the Court did not deny that *some* people in Los Angeles would be subjected to this kind of illegal chokehold, the Court held that it was "surely no more than speculation to assert that . . . [the plaintiff] *himself* will again be involved in one of those unfortunate instances." *Id.* at 108 (emphasis added). As a result, the Court held that the plaintiff lacked standing to seek the requested injunction. *Id.* at 110.

Drawing from these cases, the Court will evaluate whether "the prospect of future injury" to COBA's members is sufficiently imminent to establish standing. *O'Shea*, 414 U.S. at 496. Because COBA arguably challenges different aspects of the Division Order, and thus alleges different injuries, with respect to its federal and state law claims, the Court will first evaluate standing for COBA's federal claims and will then turn to the fate of its state law claims.

5

## A. COBA Lacks Standing to Bring Its Federal Claims

Each of COBA federal claims concerns the "type of search . . . conducted *following* [a] canine's positive alert." Am. Comp. ¶ 10 (emphasis added); *see also id.* ¶ 12 (describing the risk of "pat frisk, strip search or body cavity search" after a positive alert); *id.* ¶ 15 (describing the risk of arrest after a positive alert); *id.* ¶¶ 18, 21 (describing the risk of arbitrary dismissal after a positive alert); *id.* ¶ 25 (describing the risk of drug or alcohol testing after positive alert). Thus, the alleged federal constitutional injury is not the canine sniff itself,[1] but the searches, seizures, and other punishments that might follow. Dkt. No. 23 ("Opp. Br.") at 1, 4; *see also* Dkt. No. 12 Ex. D. at 2:23-24. Importantly, these challenged practices only occur *after* a positive alert. As a result, the likelihood of any officer suffering the alleged constitutional injuries is "necessarily contingent upon" the likelihood of a positive alert to the presence of narcotics. *O'Shea*, 414 U.S. at 498.

On this point, COBA argues that there is "a *distinct possibility* that COBA members will suffer positive canine alerts." Opp. Br. at 10 (emphasis added). In support of this claim, COBA points to the possibility of both false positive alerts and accurate positive alerts that could lead to the allegedly unconstitutional practices. *Id.* But as discussed below, under neither framework does any member of COBA face an "actual or imminent" risk of a positive alert such that she has "standing to sue in [her] own right." *Lujan*, 504 U.S. at 560; *Hunt*, 432 U.S. at 343.

---

[1] A canine sniff is not usually a search within the meaning of the Fourth Amendment. *See Illinois v. Caballes*, 543 U.S. 405, 408-09 (2005) (citing *United States v. Place*, 462 U.S. 696, 707 (1983)); *see also United States v. Hayes*, 551 F.3d 138, 144 (2d Cir. 2008). The Second Circuit has established one limited exception "in the context of a dog sniff outside of a person's home" due to the "uniquely heightened privacy interests implicated in the sanctity of a residential home." *United States v. Parrilla*, No. 13-CR-360 (AJN), 2014 WL 2111680, at *7-*8 (S.D.N.Y. May 13, 2014) (citing *United States v. Thomas*, 757 F.2d 1359, 1367 (2d Cir. 1985)). The "diminished expectations of privacy" enjoyed by correction officers, *Sec. & Law Enf't Employees v. Carey*, 737 F.2d 187, 202 (2d Cir. 1984), strongly suggest that a canine sniff of a corrections officer at work does not "intrude[] on a legitimate expectation of privacy," *Hayes*, 551 F.3d at 144, and is thus not a search.

6

### 1. No member of COBA can demonstrate an "actual or imminent" risk of false positive alert attributable to inmate drug use

In a single sentence in its opposition brief, COBA argues that "[t]he proximity of the officers to inmates in possession [of] and using such narcotics raises the . . . distinct possibility of residual odors on the officers resulting in false positive alerts by canines." Opp. Br. at 10. This theory of injury fails because it is based "on a string of unlikely contingencies." *McLennon v. City of New York,* No. 14-CV-6320 (MKB), 2016 WL 1089258, at *22 (E.D.N.Y. Mar. 18, 2016) (quoting *Floyd v. City of New York*, 283 F.R.D. 153, 170 (S.D.N.Y. 2012)). "Under *Lyons*, to establish a sufficient likelihood of a future" injury under the false positive alert theory, a plaintiff "would have to show that *if* " drugs are successfully smuggled into prison and *if* inmates succeed in using those drugs and *if* the use of those drugs leaves a "residual odor" and *if* a particular officer is in close enough proximity to that residual odor without knowing that inmates are using drugs[2] and *if* that officer is chosen for a canine sniff on that same day, then she will fall victim to a false positive alert. *See Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004) (citing *Lyons,* 461 U.S. at 111). "Such an accumulation of inferences is simply too speculative and conjectural to supply a predicate for prospective injunctive relief." *Id.* (citing *O'Shea*, 414 U.S. at 497). The speculative nature of this theory of injury is further bolstered by the fact that Plaintiff describes false positive alerts as a "distinct possibility," Opp. Br. at 10, a characterization falling far short of "actual or imminent" injury to any particular officer that "is *certainly* impending." *Lujan,* 504 U.S. at 560; *Clapper,* 133 S. Ct. at 1147. For these reasons, no member of COBA can demonstrate that she faces a threat of false positive alerts based on inmate drug use that is "actual or imminent" as opposed to "conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (internal quotation marks omitted); *see also Lyons,* 461 U.S. 95 at 108 ("[I]t is surely no more than speculation to assert that [any particular officer] will . . . be involved in one of those unfortunate instances.").

---

[2] Presumably if an officer is in close proximity to and knowingly condoning the use of drugs by inmates, any subsequent canine alert would not be a false positive alert but an accurate positive alert.

7

### 2. No member of COBA can demonstrate an "actual or imminent" risk of accurate positive alert attributable to her own contraband smuggling

Next, COBA argues that officers who smuggle drugs into prison will trigger accurate positive alerts, leading to allegedly unconstitutional searches. Opp. Br. at 10. If the alleged constitutional violation is "necessarily contingent" on some conduct of the plaintiff, the plaintiff ordinarily needs to show that he *intends* to engage in that conduct. *O'Shea*, 414 U.S. at 498 ("[W]here [plaintiffs] do not . . . indicate that it is . . . their intention to so conduct themselves, the threat of injury from the alleged course of conduct . . . is simply too remote. . . ."). Under the accurate positive alert theory, only officers who smuggle contraband can suffer any subsequent constitutional injury. Ordinarily, then, "to sue in [her] own right" based on this theory, *Hunt*, 432 U.S. at 343, a COBA member would have to show that an accurate positive alert is an "actual or imminent" threat to her because "it is . . . [her] intention" to smuggle drugs into prison. *Lujan*, 504 U.S. at 560; *O'Shea*, 414 U.S. at 498. Unsurprisingly, COBA does not argue that any of its members intend to smuggle contraband into prison. Instead, it notes that "a limited number of COBA members have been implicated in the possession of contraband" in the past. Opp. Br. at 10.[3]

There are two problems with this allegation. First, the fact that some COBA members smuggled contraband in the past is insufficient to establish that some COBA members will smuggle contraband in the future because the Court "assume[s] that [officers] will conduct their activities within the law and so avoid . . . exposure to the challenged course of conduct."

---

[3] Because these factual allegations are raised in COBA's opposition brief, COBA requests leave to amend its complaint to add this information. Opp. Br. at 10. As the Court finds that these allegations insufficient to establish standing, it denies COBA's request to amend its complaint as futile. *See Williams v. Citigroup Inc.*, 659 F.3d 208, 213-14 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Court also notes that its September 22, 2015 order, issued after the City's filed its motion to dismiss, offered COBA an opportunity to amend its pleadings and put it "on notice that declining to amend its pleadings to timely respond to a fully briefed argument in the [City's] motion to dismiss may well constitute waiver of the Plaintiff's right to use the amendment process to cure any defects that have been made apparent by the [City's] briefing." Dkt. No. 14.

*O'Shea*, 414 U.S. at 497; *see also MacIssac v. Town of Poughkeepsie*, 770 F. Supp. 2d 587, 601 (S.D.N.Y. 2011) (a plaintiff does not have standing to pursue injunctive relief if the "likelihood of suffering the same harm again" depends on "willfully breaking the law"). Second, pointing to the past wrongdoing of *other* corrections officers would be insufficient for COBA members to establish "standing to sue in their own right." *Hunt*, 432 U.S. at 343. As "associational standing may not be broader or more extensive than the standing of the organization's members," an organization must "identif[y] a single . . . member" who would have standing to sue. *Small v. Gen. Nutrition Cos.*, 388 F. Supp. 2d 83, 97-98 (E.D.N.Y. 2005); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany*, 250 F. Supp. 2d 48, 56 (N.D.N.Y. 2003) (associational standing requires showing that "a specific member" of the organization would have standing); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 215 (D.N.J. 2003) (some member of the organization must have "standing to sue individually"). Because only those smuggling contraband are subject to search under the accurate positive alert theory, no "specific member" of COBA could establish "standing to sue individually" under this theory by denying her intent to smuggle drugs but arguing that others might do so. *Arbor Hill*, 250 F. Supp. 2d at 56; *Clark*, 213 F.R.D. at 215. For these reasons, the prior misconduct of others is not an adequate substitute for what *O'Shea* requires, which is that a plaintiff intend to engage in the relevant course of conduct herself. *O'Shea*, 414 U.S. at 498.

Resisting this conclusion, COBA cites the Eleventh Circuit's decision in *Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756 (11th Cir. 1991) in support of its argument that it need not allege that its members intend to smuggle drugs in order to claim that its members face a "clear danger" of harms subsequent to a positive alert. Opp. Br. at 10 (citing *Hallandale,* 922 F.2d at 756). Plaintiff's reliance on *Hallandale* is misplaced. First,

that case, unlike the present action, involved a First Amendment challenge, resulting in a more "loosely applied" injury-in-fact analysis due to "fear that free speech will be chilled even before the law, regulation, or policy is enforced." *Hallandale*, 922 F.2d at 760. More importantly, the Eleventh Circuit in *Hallandale* concluded that the plaintiffs lacked standing because they had not established that they "wanted to pursue a specific course of action which they knew was at least arguably forbidden by the pertinent [policy]." *Id.* at 762 ("The Union . . . never says that its members intend to violate the policy or to behave in a way that would arguably violate the policy."). That holding is entirely consistent with the Court's conclusion that Plaintiff cannot establish standing for injunctive relief under the accurate positive alert theory without asserting that its members intend to smuggle drugs into prison.

Because the Court has concluded that neither the threat of false positive alerts nor the risk of accurate positive alerts triggering further allegedly unconstitutional searches is "actual or imminent" as opposed to "conjectural or hypothetical," *Lujan*, 504 U.S. at 560 (internal quotation marks omitted), no member of COBA has "standing to sue in [her] own right." *Hunt*, 432 U.S. at 343. For this reason, COBA does not have standing to bring its federal claims for declaratory and injunctive relief on behalf of its members and the Court need not consider the alternate grounds for dismissal of those claims raised by the City.

### B. Because COBA Lacks Standing to Bring Its Federal Claims, the Court May Not Exercise Jurisdiction Over Its State Claims

While COBA's federal claims do not attack the constitutionality of the initial canine sniff, COBA appears to argue in its opposition brief that the canine sniff itself violates the New York Constitution. Opp. Br. at 6. To the extent that this claim is alleged in the Amended Complaint and is distinct from COBA's federal claims, the Court lacks the power to consider it. A district court may only exercise supplemental jurisdiction over state law claims "in any civil

10

action of which the district courts have original jurisdiction." 28 U.S.C. § 1367(a). If federal claims are dismissed for lack of constitutional standing, the court lacks original jurisdiction and thus cannot exercise supplemental jurisdiction over related state claims. *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 125-26 (2d Cir. 2003), *abrogation on other grounds recognized by Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, No. 14-3993-CV, 2016 WL 2772853, at *4 (2d Cir. May 13, 2016). Although the City does not make this argument in its motion, "courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006). Because Plaintiff's federal claims have been dismissed for lack of constitutional standing, the Court may not exercise supplemental jurisdiction over any purported state law claims and those claims are dismissed.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint is dismissed without prejudice. The Clerk of Court is directed to close the case. This resolves Dkt. Nos. 11, 18.

SO ORDERED.

Dated: June 1\%, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge